L. J. RIPLEY, Appellant, v. W. J. McGAVIC AND H. GODDARD, Appellees.

Accounting: RECEIVERS: EVIDENCE. In an action for an ac-
1   counting for lumber sold by a receiver, the evidence showed that the estimate of the material received by him was inaccurate, but the total amount realized from the sales and accounted for by the receiver nearly equaled the value as shown by the receiver's invoice, so that an objection that the receiver had not accounted for the property coming into his hands could not be sustained.

Receivers: EXERCISE OF POWERS. A receiver is required to use
2   the care, skill and prudence in the sale and management of property entrusted to him that a man of ordinary skill and prudence would exercise with his own property under like circumstances. He is not liable for errors in judgment, an insurer of the property, or guarantor of particular results.

Same: Where a receiver appointed to sell lumber purchases from
3   other dealers to fill his orders, paying cash from the trust fund, and immediately reimburses that fund by a sale of the same, so that no loss is sustained, those interested in the trust cannot complain, though the receiver had no express authority so to do.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

FRIDAY, APRIL 10, 1903.

ACTION in equity for an accounting.  It appears that about July, 1896, the defendant Goddard entered into a contract with the plaintiff, Ripley, involving a stock of lumber, lath, and shingles, then situated in the city of Ft. Madison, Lee county; and that under such contract, and at the time thereof, the said property was delivered into the possession of the plaintiff.  Thereafter in an action brought by Goddard against Ripley, based upon said contract, a receiver was duly appointed for, and who took possession of said property, and for a time continued to manage and control the same.  June 30, 1897, the parties to that litigation entered into a further contract in writing looking to an adjustment of the matters of difference between them, and providing for the dismissal of the suit, and the discharge of the receiver.  The contract so entered into, after referring to the pending litigation, and to the fact that the receiver in possession of the property had borrowed money in the sum of $2,000, and had been at expense in the care and management of the property, and that costs had accrued, then provides as follows:  "It is therefore agreed by and between the parties hereto that W. J. McGavic, of Keokuk, Iowa, shall be appointed the agent of both parties hereto, to take, hold, sell and dispose of said stock, as in his own judgment may seem best, and ship such stock in his own name, and collect all accounts therefor, and to disburse the funds received from said sales of lumber, after paying the legitimate running expenses, as follows:  Pay all costs and expenses caused by the appointment of the receiver, but H. Goddard shall pay one-half of the $2,000.00 and accrued interest, borrowed by the receiver on receiver's certificates and all court costs, except costs on appeal, which shall be paid by L. J. Ripley.  It is agreed that when H. Goddard shall have received from said McGavic the sum of $23,000.00 from sales of stock as herein set forth, including the $1,000 already charged to his account, and paid on receiver's

certificates, the balance of said stock, and all accounts growing out of the sales thereof, shall revert to L. J. Ripley, and shall be turned over to him by said McGavic. Title to all lumber shall remain in H. Goddard until this agreement is fully carried out. Insurance shall be carried on said stock of lumber by McGavic, to protect H. Goddard against loss, as his interest may appear. W. J. McGavic is to receive for his services $125.00 per month, and to charge $25.00 of said salary to the account of H. Goddard, the balance—$100.00—of said salary and all traveling expenses to be charged up to the expense account."

The execution of such contract was called to the attention of the court, and an order was made and entered directing the receiver to turn over to McGavic the property in his hands, which was done accordingly. Thereafter McGavic continued in charge of the lumber yard, and in the operation of the same. Plaintiff, becoming dissatisfied with the conduct of the business, brought this suit for an accounting. Goddard refusing to join with the plaintiff in the bringing or prosecution thereof, is made a party defendant. From the decree rendered in the court below, the plaintiff appeals.—*Affirmed.*

*Daniel F. Miller* and *James H. Anderson* for appellant.

*James C. Davis* and *Casey & Stewart* for appellees.

BISHOP, C. J.—At the time this action was commenced the lumber yard was still being operated by defendant McGavic. At the time of the trial in the court below, however, the property had all been disposed of, and the action was tried without objection as for final accounting and settlement, and a decree entered accordingly.

Many grounds of complaint are stated in the petition, but those remaining to be considered are these: (1) That McGavic has not accounted for all the property in fact received by him. (2) That the business was negligently,

unskillfully, and not in good faith managed by McGavic, and this to the injury and damage of plaintiff. (3) That defendant McGavic has, in violation of the said written agreement, and without any authority, used trust funds in his hands in the purchase from other merchants and in dealing in lumber of the same kind and quality as that held by him under the agreement in question. (4) That defendant McGavic, in conne. tion with his conduct of the business in question, took possession of and sold a large quantity of lumber in which the said Goddard had no interest, but which was owned exclusively by plaintiff, and that he (McGavic) holds the proceeds thereof, and refuses to account.

The answer of the defendant McGavic is a general denial, and, in connection therewith, a specific denial of the allegations of the petition upon which are based the three grounds of complaint first above stated. The defendant Goddard, in his answer, adopts and reaffirms the allegations of the answer of McGavic.

The several matters of complaint may be considered in the order in which they are presented.

From the invoice made at the time the receiver turned the property over to McGavic it appears that there were 3,706,774 feet of lumber of all kinds, 967,500 shingles, and 22,350 lath, the whole being valued, as per wholesale price lists, at $35,155.54. The amount reported as sold by McGavic was, lumber of all kinds, 3,412,977 feet, 997,500 shingles, and 36,400 lath, from the sale of all which there was realized in cash $34,191.29. It appears that at the time the lumber was turned over to McGavic it was in piles, and unassorted— that is, the different grades were mixed together indiscriminately—and that some was hemlock, some Norway pine, and the rest white pine. Each grade and each variety had a different value. It seems that Ripley, while in possession, had gone through the yard, and marked on the

1. ACCOUNTING by receiver: evidence.

piles the grade and character of the lumber, and such marking was, in the main, accepted by the receiver as correct and accurate in making the invoice. That such marking was neither correct nor accurate in point of fact is fully established, as we think, by the evidence. The former receiver, who was a witness, testifies that the contents of some of the piles were estimated only; could not get accurate measurements. And, further: "I used the wholesale price list of S. & J. C. Atlee and Knapp, Stout & Co., by which I report the value of the lumber. But in no wise do I accept the grades as indicated on the piles of lumber to be in the whole equivalent to the grades of Knapp, Stout & Co. or S. & J. C. Atlee, as many thousand feet of hemlock and Norway is mixed through the piles, all of which is not considered to be of equal value to white pine of the same grade, and I feel assured that the true value of this lumber can only be ascertained by resorting and regrading each and every pile."

There is considerable other evidence in the record tending to prove that the invoice as made by the receiver was not correct. It will be sufficient for our purpose to refer to the testimony of one of the witnesses. He says: "In Campbell's [the receiver's] inventory, pile number 164 is inventoried at 31,872 feet, number 197 at 40,320 feet, and number 198 at 30,000 feet. I do not think we got over 10,000 feet of merchantable lumber out of the three piles. The lumber was badly damaged, warped, and short and broken pieces." It will also be observed that, while the quantity of lumber reported sold by McGavic was less than that stated in the invoice, the amount of shingles and lath sold exceeded by considerable the invoice statement. It will also be observed that the total amount realized was nearly the value of the property as fixed by the receiver's invoice. In view of the evidence before us, we think there is no reasonable basis for the complaint as to the amount of lumber reported sold by McGavic, and that the court below rightly so held.

The complaint next in order presented is not well grounded in the facts.   It will be observed that by the contract the said McGavic is to "sell and dispose of said stock as, in his own judgment, may seem best."   Now, the precise matters relied upon as grounds of complaint are that at times McGavic refused to sell lumber at market prices, the opportunity therefor being offered; that at other times he made sales to his friends and others at greatly less than market prices. No satisfactory evidence is brought forward to substantiate the first of the above mentioned assertions, and further attention thereto is not demanded.   In respect of the latter assertion made, it appears that during the closing days of his conduct of the business McGavic made sales of some mixed lots remaining at a nominal price, and that the purchasers by sorting over obtained therefrom lumber and wood greater in value than the price paid. Fraud is not shown, and it is not even suggested that McGavic gained any personal advantage from any such transactions.   We think it fair to presume that his course was dictated solely by a desire to close the business out, and thus save the expense of help, ground rent, insurance, etc, Indeed, as we read the evidence in the record, there is sufficient upon which to justify the assertion that the course pursued was in the direct line of economy, and therefore, in the interest of all parties concerned.   In any view to be taken of the evidence, however, there is no warrant for holding that the trustee had not exercised his best judgment, or had abused the discretion with which he was clothed.   A trustee is required to use that degree of care, skill, and prudence which a man of ordinary care, skill, and prudence would use in his own transactions, and with his own property under like circumstances, and such only. He is not liable for mere errors of judgment.   He is not to be held as an insurer of the property itself, nor as a guar-

2.  RECEIVERS: exercise of powers.

antor that any particular results will be worked out there-from unless by special undertaking. Pomeroy's Equity, section 1070.

Passing to the matter next complained of, we find the facts to be that in respect of some orders received by him McGavic did not have all the grades or kinds of lumber called for. He accordingly made purchases of other dealers to enable him to fill such orders. It is made to appear that such purchases were paid for by him from the trust funds in his hands. It further appears, however, that all sales made by him were for cash, and accordingly that there was an immediate return to his trust account of the money so paid out. Conceding that the matter of such purchases was not authorized by the letter of the written agreement under which McGavic acted, or, indeed, by the spirit thereof, still it is apparent that appellant suffered no legal damage on account thereof. Without damage, there can be no recovery of course. This is elementary.

3. SAME.

In respect of the fourth ground of contention, the court below found that lumber, etc., belonging exclusively to apppellant was included in that sold by McGavic, and the value of such lumber is fixed by the decree at $517.25. That lumber belonging to appellant in his own right was taken and sold in some amount, is conceded in the evidence, and we think the value thereof as found is fully as great as the evidence in the case warrants. In view of the fact that defendants do not appeal, we may accept such amount as being correct.

By its decree the court below ordered payment of said sum of $517.25, less one-half the costs of the case, to plaintiff. The balance then remaining in the hands of McGavic, after paying all costs and expenses, is ordered paid to defendant Goddard, it appearing that such amount will be insufficient to satisfy the amount due him under the contract. The decree meets with our approval, and it is AFFIRMED.